UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

UNITED STATES OF AMERICA,

-against-

RODNEY REID,

                Defendant.

---------------------------------------------------------------- X

05 CR 596 (ARR)

NOT FOR ELECTRONIC
OR PRINT
PUBLICATION

OPINION AND ORDER

ROSS, United States District Judge:

Defendant Rodney Reid ("defendant" or "Reid") has made the following pre-trial motions: (1) he moves to suppress the physical evidence found on his person because the police allegedly lacked probable cause to arrest him; (2) he moves to suppress the physical evidence gathered from a hotel room, which he was occupying just prior to his arrest, because there was allegedly no lawful justification for the warrantless search; (3) he seeks dismissal of the indictment on the grounds that the government has failed to satisfy the jurisdictional requirements of the Hobbs Act; (4) he also seeks dismissal of the indictment on the grounds that the government has failed to comply with the Petite Policy; and (5) he requests a bill of particulars; and (6) he requests further discovery pursuant to the government's obligations under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny. The court held an evidentiary hearing on the motions on March 31, 2006 and May 11, 2006, and counsel argued the motions in multiple letter-briefs to the court.

For the reasons set forth below, the court denies defendant's motions.

1

## BACKGROUND

The government has indicted Reid for one count of Hobbs Act conspiracy, in violation of 18 U.S.C. § 1951(a); seven counts of Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a); and seven counts of use of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A). The court conducted a hearing on Reid's motion to suppress the evidence gathered as the fruit of his arrest and as the result of the search of the hotel room he had occupied just prior to his arrest. After a review of the record, the court makes the following findings of fact with respect to issues before the court:

(1) In late November 2002, Detective Kenneth Robinson began investigating a robbery pattern, in which two or three male individuals, wearing masks or bandanas, entered commercial establishments primarily in Queens County, armed with at least two guns, including possibly a large machine gun. (Hr'g 3/31/06 at 4.)

(2) A white vehicle, also described as a white Mitsubishi, was observed at a few of the robberies. (Hr'g 3/31/06 at 5.) After a robbery at a gas station, law enforcement officers were able to chase the vehicle and observe its license plate number, which was reported to Detective Robinson as BLD-6756. (Id.)

(3) On December 11, 2002, Detective Robinson conducted a search for the registered owner of the white Mitsubishi. (Hr'g 3/31/06 at 6, 9.) He determined that the registered owner of the vehicle was an individual named Vinett Daley, who had an address on 226-10 Linden Boulevard in Queens County. (Id. at 6.) He further determined that an individual named Rodney Reid was associated with the same address and the same phone number as Vinett Daley. (Id.)

(4) Also on December 11, 2002, Detective Robinson investigated the summonses

2

associated with the white Mitsubishi. (Hr'g 3/31/06 at 6, 9.) He determined that the vehicle had been issued a summons at 91-32 195th Street, an address where an individual named Sean Chaney had previously been arrested. (Id. at 7.) Detective Robinson took further interest in Chaney because his criminal records showed he had a tattoo on his hand and a witness from one of the robberies in the pattern had observed a tattoo on one of the perpetrator's hands. (Id.) In addition, Detective Robinson discovered that an individual named Andrew Barrant had been involved in an accident while driving the white Mitsubishi. (Id. at 9.)

(5) On December 13, 2002, Detective Robinson suspected that Andrew Barrant was Rodney Reid when he printed out the mugshot associated with Barrant's name and found that one of his aliases was "Rodney Reid." (Hr'g 3/31/06 at 10.) Detective Robinson later printed out the mugshots associated with Barrant's NYSID number and found the mugshot associated with Reid's name. (Id. at 10.) Detective Robinson determined that the individuals in the photographs were identical. (Id.; see also 3500-KR-103, "Mugshots of Reid and Barrant.")

(6) On December 13, 2002, at approximately 7:00pm, Detective Robinson learned that a robbery had occurred at Melissa Check Cashing at 196-13 Linden Boulevard. (Hr'g 3/31/06 at 17.) At that point, Detective Robinson knew that two male blacks, wearing bandanas and armed with guns, entered the location and later fled in a white vehicle. (Id.) Later in the evening, Detective Robinson communicated with Detective Robert Reed in the 113th Precinct and learned that the victim of the robbery had identified Chaney as one of the perpetrators of the robbery in a photo array. (Id.)

(7) On the evening of December 13, 2002, after the Melissa Check Cashing robbery, Detective Robinson and Detective John Warner canvassed the area for the white Mitsubishi.

(12) Officers, who were standing outside of the hotel room, observed Chaney standing inside the window of the room. (Hr'g 3/31/06 at 21.)

(13) Members of the Emergency Services Unit ("ESU"), including Detective Billy Milan, responded to the call for back-up at approximately 8-8:30am on December 14, 2002. (Hr'g 5/11/06 at 7.)

(14) Detective Milan, a hostage negotiator, was able to contact the occupants of room 332 through the hotel phone system. (Hr'g 5/11/06 at 9.) He spoke to Chaney and tried to convince him that it would be best for him and the other individuals in the room to leave the room. (Id. at 10.)

(15) In addition, after being notified of a burning smell and smoke coming from the room, Detective Milan told Chaney that the Fire Department would need to get involved if the occupants of the room continued burning whatever they were burning. (Id. at 10.) Detective Milan overheard Chaney telling either one or more of the other occupants of the room to cease their burning activities. (Id. at 10-11.)

(16) Detective Milan spoke to Chaney almost exclusively, except for a brief interval when an individual, identified as Reid only after the arrest, got on the phone, communicated that he was in charge and screamed, cursed, and made threats against the police on the scene. (Hr'g 5/11/06 at 11.)

(17) The stand off between the police and the occupants of the room lasted approximately six and half hours. (Hr'g 5/11/06 at 15.)

(18) Reid, Chaney, and the other occupant of the room, Dayshaun Parker, were placed under formal arrest immediately after they exited the room at approximately 4:00pm on

5

December 14, 2002. (See Hr'g 3/31/06 at 23, 116.) At the hotel, Detective Warner conducted a pat down of Reid and found no weapons. (Id. at 116.) However, a search of Reid's person at the precinct revealed a substantial amount of cash in the lining of his jacket. (Id.)

(19) John Sharma, the manager of the JFK Inn, arrived at the hotel at approximately 9:30am or 10am on December 14, 2002, and was told that the occupants of room 332 were equipped with firearms. (Hr'g 5/11/06 at 47.) He gave consent to the police to do whatever was necessary under the circumstances, including evicting the occupants of room 332. (Id.) In addition, while the search of the room was underway, he gave consent for the police to break apart the vents in the room, which apparently contained firearms. (Id. at 48-49.)

(20) ESU conducted a search of the room after the arrest and recovered three guns, including a machine gun, ammunition, a register drawer, a money counter, several rolled coins, a purse, and several hundred Metrocards. (See Hr'g 3/31/06 at 25.)

(21) The general policy at the JFK Inn is that guests must leave their rooms by 12 noon on the day of check out. (Hr'g 5/11/06 at 49.) However, if guests do not check out at that time, then the hotel gives them a half an hour before communicating with them by phone to notify of them that they have overstayed. (Id.) If guests are uncooperative, the hotel locks the room doors or, in rare instances, notifies the police. (Id.) In addition, at check-in time, guests receive receipts, which notify them that they will be subject to eviction if they are involved in unlawful activity in their rooms. (Id.)

# DISCUSSION

A. <u>Probable Cause to Arrest Reid</u>

Reid argues that the physical evidence found on his person should be suppressed as the fruit of an unlawful arrest. Specifically, Reid claims that his warrantless arrest was unjustified because the police lacked probable cause to arrest him immediately upon his exit from the hotel room, prior to any search of the room. In response, the government argues that the hearing testimony establishes that law enforcement officers had probable cause to arrest Reid for the robbery that occurred on December 13, 2002 and additional crimes that allegedly occurred once the police responded to the hotel on the morning of December 14, 2002.

The Fourth Amendment protects individuals against unreasonable searches and seizures. See U.S. Const., Amdt. 4. "A warrantless arrest of an individual in a public place for a felony, or a misdemeanor committed in the officer's presence, is consistent with the Fourth Amendment if the arrest is supported by probable cause." Maryland v. Pringle, 540 U.S. 366, 370 (2003) (citing United States v. Watson, 423 U.S. 411, 424 (1976). "'Probable cause to arrest a person exists if the law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been committed by the person to be arrested.'" United States v. Gagnon, 373 F.3d 230, 234 (2d Cir. 2004) (quoting United States v. Patrick, 899 F.2d 169, 171 (2d Cir. 1990)). This knowledge or information need not be personally held by the individual arresting officer; indeed, the decision to arrest can be based on the "collective knowledge" of all law enforcement officers involved in an operation who were in communication with each other. See United States v. Cruz, 834 F.2d 47, 51 (2d Cir. 1987). Probable cause is a "fluid concept,"

Illinois v. Gates, 462 U.S. 213, 232 (1983), that does not require "absolute certainty." Boyd v. City of New York, 336 F.3d 72, 76 (2d Cir. 2003). It requires only a "probability" or a "substantial chance" that a crime has taken or is taking place. Gates, 462 U.S. at 244 n.13. "Furthermore, 'the fact that an innocent explanation may be consistent with the facts as alleged ... does not negate probable cause.'" Gagnon, 373 F.3d at 236 (quoting United States v. Fama, 758 F.2d 834, 838 (2d Cir. 1985)). An arresting officer 'is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.'" Ricciuti v. NYC Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997).

In the instant case, it is clear from the record that there was probable cause to believe that Reid was a willing participant in the Melissa Check Cashing robbery. Detective Robinson had knowledge on December 11, 2002 that Reid was connected to the white Mitsubishi observed at several recent armed robberies. He had discovered that Reid lived with the registered owner of the vehicle, Vinett Daley, and shared Daley's phone number. Moreover, there was evidence that Reid had driven the vehicle previously because he had an accident record with it under the alias Andrew Barrant, and there was also evidence that Chaney had been arrested at a location where the vehicle had been summonsed. On December 13, 2002, Detective Robinson learned that an armed robbery had occurred at Melissa Check Cashing, a white vehicle was once again spotted as the getaway car, and Chaney was identified by the victim as one of the perpetrators of the robbery. Immediately after the robbery, Detective Robinson communicated Reid's connection to the getaway car to Detective Warner. Detective Warner spent the hours following the robbery canvassing the area for the white Mitsubishi and, in fact, found it in a parking lot at a hotel near JFK Airport.

On the morning of December 14th, Detective Warner reasonably suspected that Chaney was in the area when he showed Chaney's photograph to an employee at the first hotel and was told that Chaney and other individuals had been turned away from the hotel the previous night. At another nearby hotel, the JFK Inn, Detective Warner inquired about room rentals made after 8pm on the previous night, and immediately recognized the name "Rodney" in the guest registry as referencing "Rodney Reid," the individual associated with the white Mitsubishi believed to be used as the getaway car in the robbery that occurred shortly before the room was rented. While it is unclear whether Detective Warner stated that he was explicitly looking for both Reid and Chaney when he approached the front desk at the JFK Inn, it is clear that he, Detective Morley, and Sergeant Ferrufino approached room 332 based on the belief that Reid could be inside. When the officers knocked on the door of room 332, the occupants refused to open the door and the officers heard what they believed was the sound of a gun racking. Their concern for their own safety, the safety of the occupants of the room, and the safety of the guests of the hotel, prompted them to call for back up.

Even at this early stage, a reasonable officer could conclude that there was probable cause to believe that Reid was not coincidentally at the JFK Inn, but instead was a willing participant in the Melissa Check Cashing robbery. In sum, the officers knew that (1) an armed robbery had occurred in the area on the previous evening; (2) Chaney was positively identified as one of the perpetrators of the robbery; (3) the getaway car, which was directly connected to Reid, was spotted in a hotel parking lot on the night of the robbery; (4) Chaney and a few other individuals were turned away from that hotel on the night of the robbery; (5) Rodney Reid had rented a room at the nearby JFK Inn shortly after the robbery; (6) and, in response to the police knocking on the

9

door of Reid's room, its occupants refused to answer the door and, instead, racked a gun, threatening the safety of the police and the hotel guests. It is an entirely reasonable inference from these facts that Reid—as the individual associated with the getaway car and the individual who rented the room that the police reasonably believed harbored Chaney, a known perpetrator of the robbery—was not a hostage or an unknowing acquaintance, but rather a willing participant in a criminal scheme.[1]

Based on the totality of the circumstances, the court finds that a reasonable officer could conclude that there was probable cause to believe that Reid was a willing participant in the Melissa Check Cashing robbery. Accordingly, the court denies Reid's motion to suppress the evidence gathered as a result of his arrest.[2]

B.     <u>Lawfulness of Warrantless Search of Hotel Room</u>

Reid also argues that the evidence discovered in the hotel room should be suppressed because it was recovered as a the result of a warrantless search unjustified by any of the exceptions to the warrant requirement. Specifically, Reid contends that he maintained a privacy interest in the room, despite the fact that the search was conducted after checkout time, because, in part, the JFK Inn had a policy of permitting occupants to stay past its checkout time. The

---

[1] The government also contends that the circumstances surrounding the six-and-half-hour standoff—including, <u>inter alia</u>, the observation of smoke or a burning smell from the hotel room and an unknown individual, later identified as Reid, making threats against the police over the phone—support a finding of probable cause to arrest Reid. The court, however, need not rely on the facts arising during the standoff to support its finding of probable cause.

[2] Reid also moves to suppress the evidence found in the searches of the Mitsubishi and Chevy Malibu, which apparently occurred after his arrest and the search of the hotel room. It is unclear from the record when the searches of the vehicles occurred and to what extent they relied on the arrest. Given that the court finds that there was probable cause to arrest Reid, the court also denies Reid's motion to suppress the evidence recovered from the vehicles.

government responds that Reid had no reasonable expectation of privacy in the room because the search was conducted well after checkout time and, in any event, Reid's occupancy rights were terminated when the manager of the hotel sought to evict him due to the presence of firearms in the room.

After reviewing the record, the court finds that Reid had no privacy interest in the hotel room after the manager of the hotel, John Sharma, was informed of the presence of one or more firearms in the room and notified the police that the occupants of the room should be removed or evicted. At check-in time, Reid was notified, based on the terms of his rental agreement, that the hotel would not tolerate illegal activity in its rooms, which presumably includes the presence of firearms and obviously includes the racking of a firearm in response to a police investigation. When the police informed Sharma that the occupants of room 332 were believed to possess firearms in their room and were a danger to the police and the guests of the hotel, Sharma had every right based on the terms of the rental agreement to seek eviction of Reid and the other occupants of the room. Sharma informed the police that they should do whatever was necessary to remove the room's occupants and respond to the situation. By virtue of the illegal activity in the room, Reid violated the terms of his rental agreement and, thus, was subject to eviction. Therefore, he lost any expectation of privacy in the room. See United States v. Rahme, 813 F.2d 31 (2d Cir. 1987) ("[W]hen a hotel guest's rental period has expired or been lawfully terminated, the guest does not have a legitimate expectation of privacy in the hotel room or in any articles therein of which the hotel lawfully takes possession."); see also United States v. Rambo, 789 F.2d 1289, 1295-96 (8th Cir. 1986) (holding defendant, who was in his hotel room at the time of arrest, no longer had privacy interest in hotel room because he had been justifiably ejected under

state law and his rental period had therefore expired). Furthermore, Sharma's statement was reasonably interpreted by the police as granting consent to search the room after six-and-half-hour standoff and is further supported by the fact that Sharma later granted specific consent to break apart the vents of the room, in which firearms were apparently hidden.

Given that Reid no longer had a privacy interest in the hotel room and that the hotel manager gave consent to the police to search the room, the warrantless search of the hotel room did not violate Reid's Fourth Amendment rights. See United States v. Allen, 106 F.3d 695, 699 (2d Cir. 1997) (holding that motel manager's eviction of room occupant and consent to police search of the room "was all that was required to avoid constitutional infirmity" (citing Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973)).

C.  Application of the Hobbs Act

Reid also moves to dismiss the indictment because the government has allegedly failed to set forth sufficient facts to establish the jurisdictional nexus required by the Hobbs Act. In the alternative, Reid requests a pretrial hearing on the sufficiency of the government's jurisdictional evidence.

Under the Hobbs Act, an individual who "in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do" shall be subject to criminal prosecution. 18 U.S.C. § 1915(a). A review of the indictment indicates that counts one, two, four, six, eight, ten, twelve, and fourteen charge that the commercial establishments that were allegedly robbed "sold goods that moved in interstate commerce." Based on the language of the indictment, the court is unable to conclude that as a matter of law the government will not be able to prove at trial that the

robberies obstructed or affected interstate commerce. Thus, the court concludes that the charges are set forth in sufficient detail to meet the minimum requirements established by the Second Circuit in United States v. Alfonso, 143 F.3d 772 (2d Cir. 1998). A government proffer on the jurisdictional evidence or a pretrial hearing on the matter is unwarranted.

Accordingly, Reid's motion to dismiss the indictment as insufficient is denied.

D.  Compliance with the Petite Policy

Reid also moves to dismiss the indictment for the government's alleged failure to comply with the Department of Justice's Petite Policy. The Petite Policy bars federal prosecution of an individual for a criminal act following prior state prosecution for substantially the same act unless certain substantive prerequisites are met and an Assistant Attorney General gives authorization to go forward with the federal prosecution. See U.S. Attorneys' Manual 9-2.031(A). Reid's claim that there is no Department-level authorization for his prosecution is purely speculative and, therefore, without merit. Thus, Reid's motion to dismiss the indictment based on the allegation that the government violated the Petite Policy is denied.

E.  Bill of Particulars

Reid also seeks an order directing the government to provide a bill of particulars. Rule 7(f) of the Federal Rules of Criminal Procedure only requires a bill of particulars when an indictment fails to sufficiently inform a defendant of the crimes with which he is charged. United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987). Requests for exact dates, places, and times in which events occurred and the respective roles and manner of participation of others in such events ignore the proper scope and function of a bill of particulars and are to be denied. United States v. Volpe, 42 F. Supp. 2d 204, 225 (E.D.N.Y.1999). Reid requests the names of

13

alleged co-conspirators and descriptions of, inter alia, the government's theory of Reid's role, the jurisdictional nexus between the alleged robberies and the commercial establishments, the agreement that was the subject of the alleged conspiracy, and the make and model of the firearms allegedly used by Reid. After reviewing Reid's full request, the court concludes that it is simply beyond the scope of a bill of particulars and should be denied.

F.     Discovery Obligations

Reid seeks the immediate disclosure of exculpatory evidence or material pursuant to Brady v. Maryland, 373 U.S. 83 (1963), and of impeachment evidence or material pursuant to Giglio v. United States, 405 U.S. 150 (1972). In addition, he seeks immediate disclosure of witness statements pursuant to the Jencks Act, 18 U.S.C. § 3500, a list of trial witnesses, and early disclosure of Rule 404(b) material.

Brady and its progeny do not require the immediate disclosure of all exculpatory material upon a defendant's request. Rather, the government's obligation is to disclose Brady material in sufficient time for the defense to make effective use of it at trial. See United States v. Coppa, 267 F.3d 132, 144 (2d Cir. 2001). In response to Reid's request for Brady material, the government has made a good faith representation to the court and to defense counsel that it recognizes and has complied with its disclosure obligations under Brady and will continue to comply with those obligations. Reid has suggested no reason to believe that the government will not comply with its obligations under Brady. Accordingly, the court accepts the government's representation and Reid's motion is denied. Reid's request for immediate disclosure of Giglio and Jenck's material is denied at this time. However, the court will address the timing of disclosure of Giglio and Jenck's material at a conference to be held in advance of the trial.

Reid also requests an order compelling disclosure of a list of the government's trial witnesses. The court has discretion to compel pretrial disclosure of the identity of government witnesses, but it should grant the request only if the defendant has made "a specific showing that disclosure [is] both material to the preparation of his defense and reasonable in light of the circumstances surrounding his case." United States v. Cannone, 528 F.2d 296, 300-01 (2d Cir. 1975). Here, Reid argues that the bare allegations set forth in the indictment and the limited funds to investigate and prepare for his defense establish a specific showing of need for disclosure of the government's witness list. The court concludes that the factors cited by Reid are insufficient to establish a specific showing of need under Cannone. Consequently, the court denies Reid's request for an order compelling disclosure of the government's witness list.

Finally, Reid also moves for an order compelling the government's disclosure of all Rule 404(b) evidence intended to be offered by the government. The government has already filed a motion to admit evidence of Reid's uncharged criminal activity pursuant to Rule 404(b). Given that the Rule 404(b) evidence has already been disclosed by the government, the court denies Reid's motion. The court will address the government's motion at a conference to be held in advance of trial.

Should Reid become aware of any specific failure by the government to comply with its discovery obligations in advance of trial, he may renew his motion to compel disclosure at that time.

## CONCLUSION

For the foregoing reasons, the court denies defendant's motion to suppress the physical evidence gathered as the result of his arrest and the search of his hotel room. In addition, the

court denies defendant's motions to dismiss the indictment for insufficiency and failure to comply with the Petite Policy. Defendant's motions to compel the government to provide a bill of particulars and early disclosure of discovery materials is also denied.

SO ORDERED.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　／s／ Allyne R. Ross
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

Dated: June 22, 2006
　　　　　Brooklyn, New York

SERVICE LIST:

*Attorney for the United States*

Steven E. Weiser
United States Attorney
Eastern District of New York
147 Pierrepont Street
Brooklyn, NY 11201

*Attorneys for Rodney Reid*

Samuel W. Seymour
125 Broad Street
New York, NY 10004

Nicolas Bourtin
125 Broad Street
New York, NY 10004