UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>— against —<br><br>RODNEY REID,<br><br>    *Defendant*. | **No. 05-CR-596(1) (ARR)**<br><br><br>**Opinion & Order** |

ROSS, United States District Judge:

  Defendant, Rodney Reid, moves for a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) on the grounds that his current 119-year sentence "is unconscionably long and would not be imposed under today's law." Def.'s Mot. Sentence Reduction 7 ("Def.'s Mot."), ECF No. 175 (capitalization omitted)[1]. Mr. Reid also argues that his rehabilitation efforts combined with the harsh prison conditions and risks associated with the COVID-19 pandemic further warrant reduction. *Id.* at 12–14. The government opposes on the grounds that Mr. Reid's motion fails because he has not exhausted all administrative remedies and because a "purely legal injur[y]" is an improper basis for sentence reduction under § 3582(c)(1)(A). Gov't's Opp'n 8–9, ECF No. 177.

  For the reasons set forth below, I find that Mr. Reid has proved his case for sentence reduction and impose a new sentence of twenty-one years' imprisonment followed by five years' supervised release with special conditions as set forth in the annexed amended judgment.

---

[1] Unless otherwise indicated, all docket cites are to *United States v. Reid*, No. 05-CR-596(1).

1

## BACKGROUND

In the fall of 2002, defendant, Rodney Reid, and his co-defendant, Sean Chaney, spearheaded a series of robberies. Presentence Investigation Report ¶ 2 ("PSR"). Mr. Reid and Mr. Chaney organized the crimes and carried them out with the help of additional accomplices. *Id.* ¶ 15. Mr. Reid was the primary "organizer" of the robberies. *Id.* ¶ 16. He typically acted as the getaway driver, waiting outside while the others robbed the stores, and supplied a gun for their use. *Id.* ¶¶ 15–16; Gov't's Opp'n Rule 33 Mot. 2, ECF No. 134 (filed under seal). Several victims were injured as a result of Mr. Reid and Mr. Chaney's crimes; Mr. Chaney personally beat and kicked shopkeepers, struck them in the head and, in one instance, "attempted to kill" a shopkeeper by firing bullets in his direction. Gov't's Sentencing Mem. 2–3, *United States v. Chaney*, No. 05-CR-596(2) (ARR) ("*Chaney* Docket"), ECF No. 103 (E.D.N.Y.); PSR ¶¶ 20–23. Fortunately, none of the victims suffered long-term injuries. Def.'s Mot. 7.

Mr. Reid and Mr. Chaney were arrested on December 13, 2002, after robbing a Melissa Check Cashing store in Jamaica, New York. PSR ¶ 23. Police arrived at the scene and followed Mr. Reid and Mr. Chaney to their hotel room. *Id.* After an eight-hour standoff, the two men surrendered and were arrested. *Id.* Police found a machine gun and handguns, ammunition, $12,900 along with burnt pieces of money and other papers from the Melissa Check Cashing store, and cash and credit cards belonging to a store employee. *Id.* ¶ 24. Mr. Reid was tried and convicted by a jury in Queens Supreme Court and sentenced to ten years' imprisonment. *Id.* ¶ 25. During his trial, he asked Mr. Chaney to testify falsely on his behalf and threatened another witness with violence to do the same. *Id.*; Gov't's Opp'n Rule 33 Mot. 3–4. Mr. Chaney, for his part, was sentenced to five years' imprisonment by the Queens Supreme Court. Presentence Investigation Report ¶ 62 ("PSR"), *Chaney* Docket, ECF No. 165 (filed under seal).

On August 3, 2005, a grand jury indicted Mr. Reid and Mr. Chaney on federal charges connected with the robberies. Indictment, ECF No. 1. Mr. Chaney pleaded guilty pursuant to a plea agreement in which the government "significantly miscalculated" the sentencing guidelines, resulting in a sizable discrepancy between the government's recommendation of thirteen-to-fourteen years' imprisonment and the Presentence Investigation Report's recommendation of roughly thirty years' imprisonment. Crim. J. 1, *Chaney* Docket, ECF No. 109; Gov't's Sentencing Mem. 1, *Chaney* Docket; Sentencing Tr. 10, *Chaney* Docket, ECF No. 123; PSR ¶ 82, *Chaney Docket*. During Mr. Chaney's sentencing hearing, the government explained that although it had miscalculated the guidelines, it stood by its recommendation due to its obligation to engage in "fair dealing" and because of three § 3553(a) factors, namely Mr. Chaney's young age, "the influence of Rodney Reid,"[2] and Mr. Chaney's difficult family circumstances. Sentencing Tr. 10–12, *Chaney* Docket. On December 18, 2006, I sentenced Mr. Chaney to 166 months' imprisonment to run consecutively with his undischarged five-year state sentence for the Melissa Check Cashing store crimes,[3] followed by five years' supervised release. Crim. J. 3, 5,

---

[2] The government acknowledged that Mr. Reid's influence did not warrant a "huge benefit" to Mr. Chaney because "many of his actions were undertaken without Rodney Reid present, such as the attempted murder" of one of the victims. Sentencing Tr. 10, *Chaney* Docket.

[3] Pursuant to his plea agreement with the government, Mr. Chaney did not plead guilty to counts related to the Melissa Check Cashing store robbery. Crim. J. 4, *Chaney* Docket; Sentencing Tr. 12–13, *Chaney* Docket. Therefore, his federal sentence was imposed consecutively to his state sentence for the Melissa Check Cashing store crimes because the conduct underlying that sentence was not "relevant conduct to the instant offense of conviction." U.S. Sentencing Comm'n, U.S. Sentencing Guidelines Manual § 5G1.3(b) ("U.S.S.G.") (providing that if "a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction . . . the sentence for the instant offense shall be imposed as follows: (1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and (2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment").

3

*Chaney* Docket. Mr. Chaney was released from prison on February 9, 2021, having spent just under twenty years in custody for his state and federal convictions. Bureau of Prisons ("BOP"), *Inmate Locator*, http://www.bop.gov/inmateloc/ (last visited Mar. 1, 2021) ("Inmate Locator").

The government offered Mr. Reid a plea deal with a guidelines range of sixteen to seventeen years' imprisonment, but he chose to go to trial. Def.'s Mot. 1–2. As with his state trial, Mr. Reid "repeatedly sought to obstruct justice, suborn perjury and threaten[] witnesses against him both before and after their testimony," including threatening to have one witness "attacked at the [Metropolitan Detention Center] and killed if deported to Jamaica." Sentencing Tr. 11–12, ECF No. 146.

On July 27, 2006, Mr. Reid was convicted by a jury of one count of Hobbs Act Conspiracy, multiple counts of Hobbs Act Robbery, one count of discharging a firearm during a crime of violence, and multiple counts of brandishing a firearm during a crime of violence. Jury Verdict (July 27, 2006); Crim. J. 1–2, ECF No. 139. I subsequently sentenced Mr. Reid to 1,434 months—or 119.5 years—of imprisonment. Crim. J. 3. In sentencing Mr. Reid, I was constrained by the then-mandatory stacking provision of 18 U.S.C. § 924(c)(1)(C), which required me to impose an 84-month sentence for the first 924(c) count, followed by 300-month consecutive sentences for each of the four remaining 924(c) counts, to run consecutively to the 150-month sentence[4] imposed for the Hobbs Act counts. Crim. J. 4; Sentencing Tr. 29–30. At the time, I expressed my discomfort with the severity of Mr. Reid's sentence, stating, "I have never imposed a sentence anywhere near this or seen a situation like this; and it makes it very difficult

---

[4] Pursuant to U.S.S.G. § 5G1.3(b), I adjusted Mr. Reid's sentence for the Hobbs Act counts downward by sixty months to account for the time that he had already served in state custody for "relevant conduct" because this time would not otherwise have been credited by BOP. Sentencing Tr. 29; U.S.S.G. § 5G1.3(b)(1)–(2).

4

to be in my position. Having said that, unless I'm wrong about the law, I don't really think I have many choices." Sentencing Tr. 19.

Mr. Reid has been incarcerated since December 14, 2002 and currently resides in U.S.P. Victorville in Pennsylvania. PSR ¶ 155; Inmate Locator. In the past eighteen years, he has incurred seven disciplinary infractions, with the most recent offense—destroying an item by swallowing it during an officer's attempt to search him—occurring in 2018. Disciplinary Record, ECF No. 177-1. Mr. Reid has also made rehabilitative efforts over the years. Since 2014, he has completed more than eighty-four educational courses. BOP Progress Report, Def.'s Mot. Ex. B, ECF No. 175. He has earned sufficient "points" to be transferred to a medium-security prison but has not yet been moved due to restrictions related to the COVID-19 pandemic. Def.'s Mot. 12–13.

## LEGAL STANDARD UNDER THE FIRST STEP ACT

### I. Sentence Reduction

The First Step Act allows criminal defendants to move for "[m]odification of an imposed term of imprisonment" before a federal sentencing court. 18 U.S.C. § 3582(c). To qualify for such relief, defendants must show: (1) that they have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [their] behalf," or that thirty days have lapsed "from the receipt of such a request by the warden of [their] facility, whichever is earlier"; (2) that "extraordinary and compelling reasons warrant" a reduction in the term of imprisonment; (3) that these reasons outweigh "the factors set forth in section 3553(a) to the extent that they are applicable"; and (4) that a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A); *United States v. Anderson*, No. 18-CR-71 (RJA), 2021 WL 776975, at *1 (W.D.N.Y. Mar. 1, 2021) ("It is a defendant's burden to

5

show that he or she is entitled to a sentence reduction under the [compassionate release] statute") (quotation omitted).

Accordingly, in determining what constitutes "extraordinary and compelling reasons," a district court has "discretion" to consider "the full slate" of arguments that defendants present to support a sentence reduction. *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). "The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason.'" *Id*. at 237–38 (quoting 28 U.S.C. § 994(t)).

The Sentencing Commission's policy statement explicating "extraordinary and compelling reasons" under § 3582(c) is not binding on a district court, *see id*. at 237, but it does provide some guidance. Where a defendant seeks a sentencing modification due to medical conditions, the Sentencing Commission suggests that "extraordinary and compelling reasons" may exist in two scenarios: first, where "[a] defendant is suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia"; and second, where "[a] defendant is . . . suffering from a serious physical or medical condition, . . . suffering from a serious functional or cognitive impairment, or . . . experiencing deteriorating physical or mental health because of the aging process" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which [the defendant] is not expected to recover." U.S.S.G. § 1B1.13 cmt. 1(A)(i)–(ii) (2018).

Extraordinary and compelling reasons may also exist based on "family circumstances," for example in the event of "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or "[t]he incapacitation of the defendant's spouse or registered partner

when the defendant would be the only available caregiver for the spouse or registered partner." *Id.* cmt. 1(C). In any scenario, "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." *Id.* cmt. 2.

Even if extraordinary and compelling reasons exist, they must outweigh the 18 U.S.C. § 3553(a) factors to warrant sentence reduction. *See* 18 U.S.C. § 3582(c)(1)(A). These factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and sentencing range [provided for in the U.S.S.G.] . . . .
> (5) any pertinent [Sentencing Commission] policy statement . . . .
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

*Id.* § 3553(a).

A sentence reduction is consistent with the Sentencing Commission's policy statements if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." 18 U.S.C. § 3582(c)(1)(A)(ii). The § 3142(g) factors are largely duplicative of those in § 3553(a), but they also include "whether the offense is a crime of violence" and "the weight of the evidence against the [defendant]." 18 U.S.C. § 3142(g)(1)–(4).

## II. Elimination of the Stacking Provision

The First Step Act also eliminated the stacking provision of 18 U.S.C. § 924(c)(1)(C), which mandated that a defendant convicted of multiple counts of § 924(c) charges was subject to mandatory consecutive twenty-five-year sentences for each subsequent § 924(c) charge. *See*

7

*United States v. Marks*, 455 F.Supp.3d 17, 20 (W.D.N.Y. 2020). Congress did not make this change retroactive. *Id.* at 21. However, courts have found that defendants who were sentenced under the old stacking provision may still seek sentence reduction under 18 U.S.C. § 3582(c)(1)(A). *See United States v. Haynes*, 456 F.Supp.3d 496, 515 (E.D.N.Y. 2020) (citing *United States v. O'Bryan*, No. 96-CR-10076 (JTM), 2020 WL 869475, at *1 (D. Kan. Feb. 21, 2020) ("[T]he fact that the [First Step Act] changes in § 924(c) were not explicitly retroactive is relevant [but] ultimately has little bearing on whether the court is empowered to act under Section 3582, because [i]t is not unreasonable for Congress to conclude that not *all* defendants convicted under § 924(c) should receive new sentences, even while expanding the power of the courts to relieve *some* defendants of those sentences on a case-by-case basis.") (quotations omitted)).

## DISCUSSION

### I. Administrative Exhaustion

In order to obtain a sentence reduction under 18 U.S.C. § 3582(c)(1)(A), Mr. Reid must first show that he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf," or that thirty days have lapsed "from the receipt of such a request by the warden of [his] facility, whichever is earlier." § 3582(c)(1)(A). Mr. Reid alleges that he submitted a *pro se* request to the warden in April 2020 and a follow-up request on September 18, 2020. Def.'s Reply 1–2, ECF No. 178. These requests were handwritten on paper because inmates were on lockdown without access to TruLincs computer system due to the pandemic. *Id.* at 2. Mr. Reid's facility, USP Victorville, was unable to locate these requests. Gov't's Opp'n 8. On January 19, 2021, Mr. Reid's counsel submitted another request for sentence reduction to the warden via e-mail. Request for Compassionate Release, Def.'s Reply Ex. A.

8

Although the government argues that Mr. Reid's earlier handwritten requests cannot be verified,[5] he has now satisfied the exhaustion requirement because more than thirty days have lapsed since his renewed request via counsel on January 19, 2021. The fact that Mr. Reid submitted his renewed request *after* filing the instant motion does not affect the outcome of his case; if he were to file an identical motion for sentence reduction today, there would be no question as to whether he had fulfilled his requirement. Requiring him to do so would waste time without serving the purposes of the statute. *See Reiter*, 2020 WL 4252681, at *3 ("Requiring inmates to exhaust their administrative remedies before seeking court intervention . . . protects administrative agency authority by guaranteeing agencies the opportunity to correct [their] own mistakes [and] promotes efficiency, since claims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court") (quotations omitted). Therefore, because more than thirty days have lapsed without any response from BOP, I find that Mr. Reid's motion may proceed.

## II.     Extraordinary and Compelling Reasons

Mr. Reid argues that the harshness of his current sentence constitutes an extraordinary and compelling reason for sentence reduction. Def.'s Mot. 7–12.  In opposition, the government argues that even under *Brooker*, the court's authority to grant sentence reduction is limited to

---

[5] The fact that BOP cannot locate Mr. Reid's handwritten requests does not necessarily mean that Mr. Reid has provided insufficient proof of exhaustion. At least one court in this circuit has looked to whether a defendant has: "(1) provide[d] a copy of his request to BOP, (2) state[d] the date on which he made the request to BOP, (3) provide[d] evidence that the Warden received such a request, *or* (4) provide[d] a copy of the Warden's response." *United States v. Reiter*, No. 87-CR-132 (VSB) 2020 WL 4252681, at *3 (S.D.N.Y. July 23, 2020) (emphasis added); *see also, United States v. Walters*, No. 16-CR-339 (RMB), 2020 WL 6157008, at *2 (S.D.N.Y. Oct. 21, 2020). Here, Mr. Reid did state the dates on which he made his initial requests. I need not decide whether this is sufficient proof of exhaustion because he has since provided a copy of his most recent request, which occurred more than thirty days ago.

9

grounds that are identical to or at least "categorically similar to . . . those set forth in § 1B1.13." Gov't's Opp'n 10. Relying primarily on the Seventh Circuit's decision in *United States v. Gunn*, 980 F.3d 1178 (7th Cir. 2020), the government contends that Congress did not intend that § 3582(c)(1)(A) provide relief for "purely legal injuries" such as the harsh mandatory sentence imposed on Mr. Reid. Gov't's Opp'n 9. The government further argues that the First Step Act does not provide a mechanism for granting release based on arguments that were or could have been raised on direct appeal or in a § 2255 motion. *Id.* at 10 (citing three cases decided before the Second Circuit's decision in *Brooker*: *United States v. Handerhan*, 789 F.App'x 924, 926 (3d. Cir. 2019); *United States v. Arojojoye*, 806 F.App'x 475, 477–78 (7th Cir. 2020); *United States v. Rivernider*, No. 10-CR-222 (RNC), 2020 WL 597393, at *4 (D. Conn. Feb. 7, 2020)).

      The government's argument runs afoul of binding precedent in *Brooker*. There, the Second Circuit clearly stated that nothing "in the now-outdated version of Guideline § 1B1.13[] limits the district court's discretion." 976 F.3d at 237. There is no indication that "purely legal injuries" that could have been raised in habeas petitions or direct appeals should be excluded from this discretion. Gov't's Opp'n 9. To the contrary, "the First Step Act freed district courts to consider the *full slate* of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *Brooker*, 976 F.3d at 237 (emphasis added). Indeed, courts in many districts—including this one—have found that an overly long punishment imposed under the obsolete § 924(c) stacking provision constituted an extraordinary and compelling reason for sentence reduction. *See, e.g.*, Order Adopting R. & R., *United States v. Anglin*, No. 98-CR-1124 (ERK) (E.D.N.Y. Nov. 18, 2020); *United States v. Davis*, No. 96-CR-912 (ERK), 2020 WL 6746823, at *2 (E.D.N.Y. Nov. 17, 2020); *Haynes*, 456 F.Supp.3d at 514–15; *Marks*, 455 F.Supp.3d at 25; *United States v. Baker*, 10-CR-20513 (GCS), 2020 WL

10

4696594, at *3 (E.D. Mich. Aug. 13, 2020); *United States v. Brown*, No. 01-CR-196 (JPS), 2020 WL 4569289, at *4 (E.D. Wis. Aug. 7, 2020); *United States v. Redd*, 444 F.Supp.3d 717, 723–24 (E.D. Va. Mar. 15, 2020); *O'Bryan*, 2020 WL 869475, at *1; *United States v. Maumau*, No. 08-CR-758 (TK), 2020 WL 806121, at *7 (D. Utah Feb. 18, 2020); *United States v. Urkevich*, No. 03-CR-37 (LSC), 2019 WL 6037391, at *4 (D. Neb. Nov. 14, 2019).

In keeping with this growing consensus, I find that Mr. Reid's unconscionably long sentence is an extraordinary and compelling reason justifying sentence reduction. Mr. Reid was subject to a mandatory 100-year sentence enhancement—tantamount to a death-in-prison sentence—that would not be imposed under today's law. At the time, I had no choice. Now, the law permits me to resentence Mr. Reid to a term of imprisonment that is "sufficient, but not greater than necessary" to serve the interests of justice. 18 USC § 3553(a).

Mr. Reid further argues that his case for sentence reduction is strengthened by the harsh prison conditions and health risks associated with COVID-19. While I acknowledge that COVID-19 poses a serious threat to the health and wellbeing of federal prisoners, I have found that compassionate release is not justified in cases where the defendant is not at a particularly high risk of severe illness or death from contracting the virus. *United States v. Figueroa*, No. 15-CR-495 (ARR), 2021 WL 664004, at *3 (E.D.N.Y. Feb. 19, 2021); *United States v. Dekattu*, No. 18-CR-474 (ARR), 2020 WL 7711842, at *2 (E.D.N.Y. Dec. 29, 2020). *See also United States v. Turnbull*, No. 16-CR-809 (VM), 2020 WL 5089439, at *1 (S.D.N.Y. Aug. 28, 2020) ("Numerous courts have found that the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release, absent additional factors such as advanced age or serious underlying health conditions that place a defendant at greater risk of negative complications from the disease."); *United States v. Washington*, No. 14-CR-215 (LJV), 2020 WL

1969301, at *4 (W.D.N.Y. Apr. 24, 2020) (finding no extraordinary and compelling reasons for release when the defendant submitted no medical evidence showing that COVID-19 posed an increased risk to him, despite the presence of COVID-19 at defendant's facility); *United States v. Pinto-Thomaz*, 454 F. Supp. 3d 327, 329–30 (S.D.N.Y. 2020) (recognizing that concerns about the spread of COVID-19 in a crowded prison were justified but finding no extraordinary and compelling reasons when the defendants were "no different from a host of other prisoners" and absent evidence of widespread transmission in the defendants' facilities).

Mr. Reid has not alleged that he suffers from a high-risk health condition, nor is he a member of a high-risk age group. *See Older Adults*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last updated Feb. 26, 2021). Absent any factors placing Mr. Reid at a particularly high risk of serious illness, I cannot conclude that the health risks associated with COVID-19 constitute an extraordinary and compelling reason for reducing his sentence. My rejection of this claim does not affect the outcome of his motion, however, as I have already found that his harsh sentence is an extraordinary and compelling reason on its own.

### III.     Appropriate Relief Under the 18 U.S.C. § 3553 Sentencing Factors

Before granting a motion for sentence reduction, the court must determine whether the defendant poses "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," U.S.S.G. § 1B1.13(2), and must consider "the factors set forth in section 3553(a)." 18 U.S.C. § 3582(c)(1)(A). These factors favor reducing Mr. Reid's sentence. Although Mr. Reid's crimes of conviction—as well as his threats of violence against testifying witnesses—were extreme, they do not warrant a 119-year sentence. Reducing Mr. Reid's sentence so that it complies with current law instead of an outdated and unjust sentencing

12

scheme would "promote respect for the law," "provide just punishment for [his] offense[s]," and fulfill "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(2)(A), (a)(6).

Furthermore, in the eighteen years that Mr. Reid has been incarcerated, he has shown that he is working toward becoming a better person. He has completed more than eighty-four educational courses since 2014,[6] BOP Progress Report, and has earned "sufficient 'points' to be transferred to a medium-security institution," Def.'s Mot. 13. Mr. Reid also has loving family members who are willing to support him outside of prison. Letters from Family Members, Def.'s Mot., Ex. C; Def.'s Reply, Ex. B. In his own words, Mr. Reid writes that "there are not enough words in the human language that could ever possibly delineate the remorse I have looking back at the lifestyle and associations prior to my incarcerations," and that "[t]he man I am today in 2021 is worlds apart from that young man." Def.'s Reply, Ex. C.

Mr. Reid argues that these factors warrant a sentence reduction to time served, which would result in his immediate release. Def.'s Reply 7. The government maintains that his sentence should not be reduced at all but contends that in the event that I grant his motion, I should sentence him to at least thirty-eight years' imprisonment. Gov't's Opp'n 11. The government is correct that under the current § 924(c) sentencing scheme, Mr. Reid would be subject to five mandatory consecutive sentences amounting to a total of thirty-eight years: four seven-year sentences and one ten-year sentence for the firearm discharge count.[7] Def.'s Mot. 10.

---

[6] Mr. Reid "has also completed multiple educational courses while at previous institutions" between 2002 and 2014, but these records are unavailable. BOP Progress Report 3.

[7] In 2005, I sentenced Mr. Reid to 150 months' imprisonment on the Hobbs Act counts to run consecutively to the § 924(c) counts. Crim. J. 4. However, current law permits me to shorten his Hobbs Act sentence to as little as one day. In *Dean v. United States*, which was decided after Mr. Reid's initial sentencing, the Supreme Court held that "a district court does not violate the terms

However, § 3582(c)(1)(A)(i) permits me to reduce Mr. Reid's sentence to an amount lower than the mandatory minimum. *See Brooker*, 976 F.3d at 230, 238 (permitting the district court to grant compassionate release to a defendant serving a fifteen-year mandatory minimum sentence).

Mr. Reid encourages me to consider the disparity between his and Mr. Chaney's sentences in calculating a reduced sentence. Def.'s Reply 8–9. Although 18 U.S.C. § 3553(a)(6) "requires a district court to consider nationwide sentence disparities, but does not require a district court to consider disparities between co-defendants," *United States v. Frias*, 521 F.3d 229, 236 (2d Cir. 2008), many courts have looked to the disparity between co-defendants in granting sentence reduction in § 924(c) stacking cases. *See, e.g.*, *Haynes*, 456 F. Supp. 3d at 499; *Davis*, 2020 WL 6746823, at *2. The government, in support of its recommendation of a thirty-eight-year sentence, argues that an eighteen-year disparity between the sentences imposed on Mr. Reid and Mr. Chaney is warranted because Mr. Reid played a leadership role and did not plead guilty. Gov't's Opp'n 12. I disagree and find that a sentence of thirty-eight years' imprisonment is too long. However, I also find that the defense's recommendation of time served is too lenient. I am unpersuaded by Mr. Reid's argument that he is less culpable because, unlike Mr. Chaney, he did not personally commit any acts of violence. Mr. Reid obstructed justice, provided weapons for use in carrying out the robberies and, as the defense concedes, was the primary organizer. Def.'s Reply 9. He should not be rewarded for attempting to distance himself from detection by assuming the role of the getaway driver. Furthermore, Mr. Reid's repeated references to Mr. Chaney's fourteen-year sentence are somewhat misleading because they do not

---

of § 924(c) so long as it imposes the mandatory minimum in addition to the sentence for the violent . . . crime," whether that sentence is "one day or one decade." 137 S.Ct. 1170, 1177 (2017). Therefore, if Mr. Reid were sentenced today, the minimum sentence would be thirty-eight years and one day.

account for the fact that Mr. Chaney's federal sentence ran consecutively to his five-year state sentence; in fact, Mr. Chaney served almost twenty years in prison for his crimes.

I find that a reduced sentence of twenty-one years' imprisonment is sufficient but not greater than necessary to "promote respect for the law," "provide just punishment for [his] offense[s]," and fulfill "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(2)(A), (a)(6). With a federal sentence of twenty-one years, Mr. Reid will end up serving a total of roughly twenty-three to twenty-four years in federal and state prison for his crimes,[8] assuming that he earns full credit for good conduct going forward.[9]

## CONCLUSION

For the foregoing reasons, I grant Mr. Reid's motion for sentence reduction and sentence him to 252 months' imprisonment followed by 5 years' supervised release. I impose several special conditions to this period of supervised release, including three months of home confinement with location monitoring, a restitution amount of $9,000.00, a special assessment amount of $1,100.00, and search and financial disclosure provisions, all as set forth in the annexed amended judgment.

SO ORDERED.

                                                                                              ____/s/_____
                                                                                              Allyne R. Ross
                                                                                              United States District Judge

---

[8] This calculation includes the time Mr. Reid served for his state sentence. With hindsight, I now know that the BOP did not credit the approximately five years he spent in state custody and began running the clock on his federal sentence on December 18, 2007. BOP Progress Report 1.

[9] A representative from U.S. Probation Services confirmed that Mr. Reid has earned 475 days of good conduct credit so far and will earn 54 credits per year going forward as long as he does not incur any disciplinary infractions.

Dated:	March 5, 2021
	Brooklyn, New York